Laniox v City of New York (2019 NY Slip Op 02026)





Laniox v City of New York


2019 NY Slip Op 02026


Decided on March 19, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2019

Friedman, J.P., Richter, Gesmer, Kern, Moulton, JJ.


7996 306867/11

[*1]Evelyn Laniox, Plaintiff-Respondent,
v
The City of New York, Defendant, The New York City Housing Authority, Defendant-Appellant.


Wilson Elser Moskowitz Edelman & Dicker LLP, New York (Patrick J. Lawless of counsel), for appellant.
Popkin & Popkin, LLP, New York (Eric F. Popkin of counsel), for respondent.



Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered on or about September 22, 2017, which denied the motion of defendant New York City Housing Authority (NYCHA) for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
NYCHA met its prima facie burden by demonstrating that plaintiff failed to raise an issue of fact as to whether the assailant was an intruder, as opposed to a tenant or invitee lawfully on the premises (see Burgos v Aqueduct Realty Corp., 92 NY2d 544 [1998]; Smith v New York City Hous. Auth., 130 AD3d 427 [1st Dept 2015]). In support of its motion, NYCHA submitted plaintiff's deposition testimony that she was not a resident and did not know any other tenants in the building aside from her two patients. Plaintiff also testified that she did not see her assailant's face because he kept his face covered with the hood of his sweatshirt and that she did not know if her assailant was a tenant or guest.
Despite plaintiff's deposition testimony, she subsequently submitted an affidavit in opposition to the motion for summary judgment stating that the assailant did not conceal his face while in the building. This portion of the affidavit directly contradicts her prior testimony and creates a feigned issue of fact insufficient to defeat a properly supported motion for summary judgment (Vila v Foxglove Taxi Corp., 159 AD3d 431, 431 [1st Dept 2018]; see Vilomar v 490 E. 181 St. Hous. Dev. Fund Corp Corp., 50 AD3d 469 [1st Dept 2008]).
We previously have held that the victim's familiarity with building residents, a history of ongoing criminal activity, and the assailant's failure to conceal his or her identity tend to demonstrate that the assailant was more likely than not an intruder (see Chunn v New York City Hous. Auth., 83 AD3d 416 [1st Dept 2011]; De Luna-Cole v Fink, 45 AD3d 440 [1st Dept 2007]; Patel v 25 Gunhill Assoc., 277 AD2d 84 [1st Dept 2000]; Reynolds v New York City Hous. Auth., 271 AD2d 280 [1st Dept 2000]; Foreman v B & L Props. Co., 261 AD2d 301 [1st Dept 1999]). Here, plaintiff's testimony demonstrates that these important factors were not present. Thus, plaintiff "provided no evidence from which a jury could conclude, without pure speculation, that it was more likely than not that the assailant was an intruder" (Hierro v New York City Hous. Auth., 123 AD3d 508, 508-509 [1st Dept 2014]).
Contrary to the dissent's position, NYCHA does not concede that it was aware of ongoing criminal activity in the building. In fact, it denies this in its answer. In its reply brief on appeal, NYCHA explicitly states that it is not conceding that it was aware of any ongoing criminal activity. Rather, it focuses on the argument that there is no proximate cause because it is just as likely the assailant was a tenant or invitee. Also, plaintiff did not produce any evidence, such as police reports, during discovery or any time thereafter, to show the extent of any such alleged [*2]prior criminal activity. The only evidence plaintiff points to is the deposition testimony of the building's caretaker stating that she was unaware of any criminal acts in the building, except that she learned about a shooting at a deposition in another case. However, she provided no details about that single incident, including whether the shooter was a tenant or intruder, and there is no other evidence about it in the record.
Nor is the fact that NYCHA was aware of a broken building entry door sufficient, by itself, to establish liability on its part. Although we do not condone NYCHA's alleged failure to adequately repair the door lock, if the identity of the assailant remains unknown, plaintiff must provide sufficient evidence to establish that the assailant was more likely than not an intruder (Burgos, 92 NY2d at 551). Plaintiff testified that she did not recognize and could not identify the assailant, nor did she know whether he was a tenant, invitee or intruder.
During plaintiff's deposition, she testified that the assailant's hood was up, that she was unable to describe his facial features, and that she never got a good look at his face. At the 50-H hearing, plaintiff testified that during the struggle, she was unable to see the assailant's face because "he kept his face covered with his hood." Despite the dissent's efforts to attribute the assailant's actions to the weather, the fact that the assailant kept his face covered with the hood of his sweatshirt and that plaintiff was unable to see his face because of his hood is sufficient circumstantial evidence to support the inference that the assailant was attempting to conceal his identity. Plaintiff's testimony, which is mentioned by the dissent, that the assailant said something to another person while in the elevator, does not establish the identity of the assailant because we do not know who he was speaking to, or any details of the exchange.
Finally, although there is not a single factor test to determine whether it is more likely than not that the assailant was an intruder, the cases cited by the dissent (Patel v 25 Gunhill Assoc., 277 AD2d 84 [1st Dept 2000]; Carmen P. v PS & S Realty Corp., 259 AD2d 386 [1999]) are factually distinguishable because in those cases, the plaintiffs were building residents and each adduced sufficient evidence to establish a pattern of ongoing criminal activity on the premises. There would be no reason in these cases to discuss whether the assailant hid his identity because the injured parties were tenants who could recognize people in the building. Here, by contrast, plaintiff was not a building resident, and there is no evidence in the record of significant ongoing criminal activity in the building, or its surrounding areas.
Accordingly, NYCHA's motion should have been granted.
All concur except Gesmer and
Kern, JJ. who dissent in a memorandum
by Gesmer, J. as follows:




GESMER, J. (dissenting)


The only issue before us on this appeal is whether plaintiff has raised triable issues of fact from which the factfinder could reasonably infer that her assailant was an intruder (Burgos v Aqueduct Realty Corp., 92 NY2d 544, 551 [1998]; Chunn v New York City Hous. Auth., 83 AD3d 416, 417 [1st Dept 2011]). In my view, she has done so. Accordingly, I respectfully dissent.
When a landlord breaches its duty to take minimal precautions against foreseeable criminal activity, a tenant or invitee who is assaulted on the property may recover damages from the landlord if the failure to provide adequate security was a proximate cause of the assault (Burgos, 92 NY2d 544, 548). If the identity of the assailant is unknown, the plaintiff must show that it is more likely than not that the assailant was an intruder, rather than a tenant or other person lawfully on the premises, "[s]ince even a fully secured entrance would not keep out another tenant, or someone allowed into the building by another tenant" (id. at 550-551). On a defendant's motion for summary judgment in such a case, the court must view the facts before it in the light most favorable to the plaintiff to determine whether she has presented any facts "from which intruder status may reasonably be inferred" (id. at 551). "To defeat a motion for summary judgment, a plaintiff need not conclusively establish that the assailants were intruders" (Chunn v New York City Hous. Auth., 83 AD3d 416, 417).
Plaintiff, a nurse, was on her way to visiting her patient who lived in a building owned and maintained by defendants when she was assaulted from behind by an unidentified attacker. [*3]She commenced this action in which she alleges, inter alia, that defendants' negligence in maintaining adequate security was a proximate cause of her injuries.
Defendant New York City Housing Authority (defendant) does not dispute that its employees were aware on the day plaintiff was assaulted that the lock on the front door of the building had been broken for approximately three months [FN1]. Defendant also did not dispute before the motion court plaintiff's claim that her assault was reasonably foreseeable because defendant was aware of criminal activity on the premises prior to her assault.[FN2]
Defendant sought summary judgment, arguing only that plaintiff could not establish that its negligence in securing the building was a proximate cause of her injuries because there was no evidence from which the factfinder could reasonably infer that her assailant was an intruder.
In my view, the motion court correctly denied defendant's motion. In Burgos, the Court of Appeals reversed two decisions from this court, and expressly rejected a requirement in cases like this one that a plaintiff definitively rule out the possibility that the assailant was a tenant or invitee, finding that this was an "impossible burden" (Burgos, 92 NY2d at 551; see also Carmen P. v PS & S Realty Corp., 259 AD2d 386, 388 [1st Dept 1999]). Rather, Judge Kaye wrote that "a plaintiff who sues a landlord for negligent failure to take minimal precautions to protect tenants from harm can satisfy the proximate cause burden at trial even where the assailant remains unidentified, if the evidence renders it more likely or more reasonable than not that the assailant was an intruder who gained access to the premises through a negligently maintained entrance" (92 NY2d at 551).
Consistent with Burgos, we have since held that, where a plaintiff cannot identify her assailant as an intruder, a showing that the landlord was aware of a broken building entry door lock and of prior criminal acts in the vicinity "raise[s] an issue of fact as to the intruder status of [*4]the assailant" sufficient to defeat a summary judgment motion (Patel v 25 Gunhill Assoc., 277 AD2d 84 [1st Dept 2000]; see also Carmen P., 259 AD2d 386]). Here, plaintiff testified that she witnessed her assailant enter the building through the door on which the lock had been broken for several months. My colleagues note that the record before us contains little detail about prior crimes in the vicinity. However, the building caretaker testified that she was aware of a shooting in the building. Morever, in its summary judgment motion, defendant did not dispute plaintiff's claim that it was aware of ongoing criminal activity. The proponent of a summary judgment motion has the burden to demonstrate that there are no issues of fact in dispute requiring a trial, and failure to meet this burden requires denial of the motion, regardless of the sufficiency of the opponent's response (Pullman v Silverman, 28 NY3d 1060, 1062 [2016]). Defendant cannot meet its burden by failing to address at all plaintiff's allegation that it had notice of prior criminal activity. Accordingly, the sufficiency of plaintiff's proof of prior criminal activity is not at issue on this appeal.
As my colleagues note, we have held that evidence that an assailant did not attempt to conceal his identity can be sufficient to raise a question of fact as to whether he was an intruder. However, this showing is not required where, as here, plaintiff has presented other facts from which the factfinder could reasonably infer that her assailant was an intruder (see Patel, 277 AD2d 84; Carmen P., 259 AD2d 386). In any event, for the reasons discussed below, I respectfully disagree with my colleagues' characterization of plaintiff's testimony about her assailant. As a result, I find that her testimony was entirely consistent with her statement in her affidavit that he did not attempt to conceal his identity.
Plaintiff, who is 5' 6" tall, testified that, as she approached the building, she observed a thin young man, a few inches taller than she, and a young woman enter the building before her through the unlocked door. When plaintiff then entered the building, she observed the young man sitting on the steps to the left of the elevator. Plaintiff further testified as follows:
Q: Okay. And could you describe that young man?
A: All I saw was he was - - his head was down. He was on the phone. He had the gray and the black hoodie and a pair of jeans. And he was on his phone. He had a backpack on. And he had brown skin.
. . .
Q: Now, you say that the man had a black hoodie on?
A: Black and gray.
Q: Was the hood up?
A: Yes.
Q: And his head was down, so other than seeing that his skin was brown, can you describe his features in any other way?
A: No.
Q: Do you know whether he had any facial hair?
A: I don't know.
Q: Throughout - - from now until this incident occurred, did you ever get a look at his face?
A: Not that I recall.
Plaintiff testified that, when the elevator came, she and the two young people and an elderly man in a wheelchair got on. After they got on the elevator, the young man and the young woman began speaking to each other. They spoke loudly enough for her to hear, but she did not recall what they said because she was "looking at my things, what I was going to do with my patient, so I was not paying any mind to them."
Plaintiff testified that, when she got off the elevator, she was attacked from behind. She recognized the sleeve of the young man's sweater because he had wrapped his left arm around her neck and was choking her while holding his right hand over her mouth. She passed out, and came to with the young man still behind her trying to grab a chain she was wearing around her neck. She managed to break free and run down the hall about ten feet away from him and about [*5]two feet away from her patient's door, when she turned and saw him start to come toward her. She began screaming and banging on her patient's door, at which point the young man screamed at her to "shut up," and then turned and ran into a nearby stairwell. She testified that the time from when she regained consciousness to when she began screaming and banging on her patient's door is "a block of time I just don't remember." She was "so shaken up" from the assault that she had difficulty remembering what happened even after reaching the relative safety of her patient's apartment, when she was "still hyperventilating. I couldn't think. I was still wrapping my mind around the fact that somebody tried to kill me." She could not recall being struck by her assailant, but when she saw herself in a mirror in her patient's apartment, she noticed that her face was bruised and scratched, and that there was blood on the front left side of her neck.
Although plaintiff testified that she did not recall ever getting a look at the young man's face, and that he had his hood up at all times when she was able to see him, including during the assault, she did not testify that he was trying to hide his face, nor was she asked whether she observed him trying to do so, either at her 50-h hearing or at her deposition. Moreover, her observation that he wore his hood up on a "cool" day in November is not sufficient on this summary judgment motion to prove that he intended, by wearing his hood, to prevent anyone from identifying him. In addition, her undisputed testimony that he engaged in an audible conversation on the elevator, in front of several people, raises a further question of fact as to whether he was trying to conceal his identity.
The majority mischaracterizes plaintiff's testimony as being that her assailant deliberately prevented her from seeing his face by keeping his hood up, arguing that this is inconsistent with her statements in her affidavit that he had not tried to conceal his identity. However, that was not her testimony. As discussed above, plaintiff did not testify or imply that her assailant tried to conceal his identity. Rather, she testified that, on the "cool" day in November when she was assaulted, the young man was wearing a hoodie with the hood up, and was looking down at his phone when she entered the building. On the elevator, she testified, she was absorbed in her work and not paying attention to the young man, who spoke loudly enough for her to hear what he was saying. Her memory of the assault contained gaps because she was extremely shaken by it, and she did not recall ever getting a look at his face. This testimony is entirely consistent with her statements in her affidavit that his wearing his hood up on what she had testified was a "cool" day in November was not remarkable, and that she did not observe him doing anything she perceived as being designed to "conceal his identity."[FN3]
The majority cites to Villa v Foxglove Taxi Corp., where we held that a "party's affidavit that contradicts his prior sworn testimony creates only a feigned issue of fact, and is insufficient to defeat a properly supported motion for summary judgment" (159 AD3d 431 at 431 [2018]). In that case, when the plaintiff was asked at his deposition why he had stopped receiving medical treatment for his alleged injuries for four years, he testified that, although he had insurance, he did not like doctors. In his later affidavit in opposition to a summary judgment motion, he made the completely contradictory statements that he had stopped receiving treatment because he did [*6]not have insurance, and because a doctor had told him further treatment would not be effective. Similarly, in Vilomar v 490 181st Street Housing Development Fund Corp Corporation (50 AD3d 469 [1st Dept 2008]), also cited by the majority, the plaintiff testified that he had not seen anything on the stairs prior to slipping and falling on them, and the defendant's employee testified that he cleaned the stairs twice a day and had not seen anything on the stairs the evening before the plaintiff's fall. In opposition to the defendant's summary judgment motion, the plaintiff submitted the affidavit of his girlfriend, who claimed to have seen a banana peel on the stairs two days before the plaintiff's fall, and that the stairs had not been cleaned for four days before. In both cases, we found that the affidavits directly contradicted earlier testimony and created feigned issues of fact insufficient to defeat a summary judgment motion.
In contrast, here, when defendant's attorney questioned plaintiff at the 50-h hearing and at her deposition, counsel did not ask her whether her assailant was trying to hide his identity. Apparently, defendant first raised that issue in its summary judgment motion. Accordingly, plaintiff's affidavit in opposition was her first opportunity to address it. Although her statement that she did not observe that her assailant was trying to conceal his identity was information that was neither sought nor obtained at her 50-h hearing or her deposition, it is entirely consistent with her earlier testimony. Moreover, to the extent that there is any inconsistency between her deposition testimony that he had his hood up and her statement in her affidavit that he was not trying to conceal his identity, it "may be weighed by the trier of fact, but [does] not support judgment as a matter of law" (Granados v New York City Hous. Auth., 255 AD2d 249, 250 [1st Dept 1998]).
For all of these reasons, I would vote to affirm the motion court's denial of defendant's summary judgment motion.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 19, 2019
CLERK



Footnotes

Footnote 1:Defendant's employee testified that her duties included completing the building's daily caretaker logs, on which she was required to indicate the condition of the front door, that she listed the door lock as being broken on the logs between September 1 and November 22, 2010, that she advised her supervisor each time she observed that a lock was broken, that the records did not indicate that the lock had been repaired, and she did not remember anyone having attempted to repair the lock during that time. Plaintiff, who had been to the building on many prior occasions, testified that, on each occasion, the doors to the building were wide open and she was able to walk into the building without being buzzed in.

Footnote 2:Before the motion court, defendant argued only that plaintiff's inability to identify her assailant and her not having testified at her hearing pursuant to General Municipal Law § 50-h that he had entered through a door with a broken lock were insufficient, as a matter of law, for a trier of fact to determine that he was an intruder who gained entry to the building due to defendant's negligence in maintaining security. For the reasons discussed below, I disagree. Defendant argues for the first time in its reply brief on this appeal that it disputes that it had notice of prior criminal activity in the area. However, defendant failed to argue this on its motion for summary judgment. Indeed, even after plaintiff's attorney argued in opposition to defendant's motion that defendant had not challenged plaintiff's claim that defendant was aware of ongoing criminal activity, defendant did not dispute or otherwise address this claim in its reply papers before the motion court. 

Footnote 3:The only witness whose testimony provides what the majority refers to as "sufficient circumstantial evidence to support the inference that the assailant was attempting to conceal his identity" is plaintiff, and she unequivocally stated in her affidavit in opposition that "he took no steps to hide his identity." I take issue with the majority's suggestion that I am speculating about the reason the assailant kept his hood up. That finding is based on the record, specifically, on plaintiff's affidavit in opposition, in which she attributed to the cool weather the fact that her assailant had his hood up at all times, and noted that the hoodie, even when up, did not conceal his face in any event.